UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| BOBBIE DENTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:16-CV-00253 |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Deputy Commissioner of Operations, | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Plaintiff Bobbie Denton seeks review of the decision of Defendant Nancy Berryhill, Deputy Commissioner of Operations, Social Security Administration ("SSA"), denying her application for Supplemental Security Income ("SSI") under the Social Security Act.[1] (ECF No. 18) Because the Court finds that substantial evidence supports the decision to deny benefits for the period in question, the Court affirms the denial of Plaintiff's application.

I.      **Background and Procedural History**[2]

Plaintiff filed an application for SSI alleging she was disabled as of March 31, 2013 as a result of: bipolar disorder, generalized anxiety, back pain, degenerative disc disease, leg pain, bilateral knee pain, diabetes, neuropathy, panic attacks, lumbosacral spondylosis, sacrolitis, sleep apnea, hypersomnia, depression, headaches, and hernia.[3] (Tr. 85). The SSA denied Plaintiff's

---

[1] The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 7).
[2] Plaintiff appeals the ALJ's determination of her mental residual functional capacity ("RFC"). She does not challenge the ALJ's findings as to her physical RFC. The Court therefore limits its discussion of the facts to those relating to Plaintiff's mental impairments.
[3] In a prior decision, an administrative law judge ("ALJ") found that Plaintiff was disabled from January 26, 2012 through March 31, 2013. (Tr. 79) In the present case, the ALJ observed that

1

claims, and Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 104-05) The SSA granted Plaintiff's request for review, and an ALJ conducted a hearing in June 2015. (Tr. 39-83)

At the hearing, Plaintiff testified that she was thirty-five years old, 5' 4.5" tall, and 308 pounds. (Tr. 34) Plaintiff had a high school degree and last worked in 2008 as a cashier at a Winn Dixie. (Tr. 35-36) She left that job due to a back injury. Plaintiff considered her knees and back to be the most serious health problems that affected her ability to work. (Tr. 36)

In regard to her mental impairments, Plaintiff testified that she had bipolar disorder, anxiety, and panic attacks. (Tr. 45-48) Plaintiff received counseling once a month. (Tr. 54) Plaintiff stated that she generally suffered two panic attacks per week, during which she experienced "heavy breathing, tightness in the chest," and "shaking and crying." (Tr. 45) "Having to go out in public" and not hearing from her family triggered these attacks. (Tr. 46) She took Ativan, which helped "sometimes." (Id.)

Plaintiff explained that her depression caused her to isolate herself in her apartment "and cry all day…about three to four times a month." (Tr. 46) During those episodes, she did not eat and sometimes missed appointments. (Id.) Plaintiff did not believe her anti-depressant medications were helping. (Tr. 47) Plaintiff testified that she experienced "manic phases…[j]ust about every [day]," during which "I'm out of control, I start screaming and yelling at people, I start scratching myself." (Id.) Plaintiff stated that she had difficulty getting along with "strangers," but conceded that she was able to get along with her friends and family. (Tr. 48)

---

Plaintiff's "current alleged onset date [of March 31, 2013] constitutes an implied request for reopening, but the undersigned finds no reason to reopen the prior decision." (Tr. 12) The ALJ therefore considered whether Plaintiff was disabled as of February 4, 2014, the date she filed the instant application for SSI.

On a typical day, Plaintiff woke up, made coffee, listened to the radio, and read the Bible "pretty much all" day. (Tr. 49) Plaintiff stated that she had difficulty remembering what she read. (Tr. 49) Plaintiff testified that she did some light cooking, but no sweeping, vacuuming, or laundry, and she did not attend activities, such as religious services, outside of the home. (Tr. 50)

A vocational expert also testified at the hearing. The ALJ asked the vocational expert to consider a hypothetical individual with Plaintiff's age, education, and work experience able to perform at the light exertional level and the following non-exertional limitations: the capacity to perform "simple and moderately complex tasks," "maintain concentration, persistence and pace for periods up to two hours at a time," "understand, carry out, and remember simple and moderately complex instructions and procedures," and handle "occasional and superficial interaction with the public and coworkers." (Tr. 57) The vocational expert testified that such an individual could perform the jobs of copy machine operator and toy assembler. (Id.) When the ALJ asked the vocational expert to consider a similar hypothetical individual limited to sedentary work, the vocational expert stated that such person could work as a document preparer or table worker. (Tr. 58)

In his decision, the ALJ performed the five-step evaluation process set forth in 20 C.F.R. § 416.920(a) and determined that Plaintiff had not engaged in substantial gainful activity since February 4, 2014. (Tr. 14) The ALJ found that Plaintiff had the following severe impairments: diabetes mellitus, sleep apnea, morbid obesity, hernia status post repair, hypertension, chronic obstructive pulmonary disorder ("COPD"), anxiety, depression, bipolar disorder, and schizoaffective disorder. (Tr. 14) Additionally, the ALJ found that Plaintiff had the non-severe impairments of degenerative disc disease, headaches, peripheral neuropathy, and knee pain. (Tr.

15) At step three of the evaluation, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16)

After thoroughly reviewing Plaintiff's testimony and medical records, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible[.]" (Tr. 18) The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work with the following non-exertional limitations:

> She can maintain concentration, persistence, and pace for extended periods of time up to two hours. The complexity of tasks is learned and performed by rote, with few variables and little judgment required. She can respond appropriate[ly] to basic work setting changes. She can have occasional and superficial interaction with coworkers and the public.

(Tr. 17) At steps four and five of the sequential evaluation, the ALJ concluded that Plaintiff was unable to perform any past relevant work but had the RFC to perform other jobs that exist in significant numbers in the national economy. (Tr. 21-22) The ALJ therefore concluded that Plaintiff was not disabled. (Tr. 22)

Plaintiff filed a request for review of the ALJ's decision and submitted additional evidence to the SSA Appeals Council. (Tr. 8) The Appeals Council denied the request. (Tr. 1-6) Plaintiff has exhausted all administrative remedies, and the ALJ's decision stands as the SSA's final decision. Sims v. Apfel, 530 U.S. 103, 106-07 (2000) (citing 20 C.F.R. §§ 404.900(a)(4)-(5), 404.955, 404.981, and 422.210(a)).

### III. Standard for Judicial Review

A court must affirm an ALJ's decision if it is supported by substantial evidence. 42 U.S.C. § 405(g); see also Jones v. Astrue, 619 F.3d 963, 968 (8th Cir. 2010). "Substantial

evidence is 'less than a preponderance, but enough that a reasonable mind would find it adequate to support a conclusion.'" Combs v. Berryhill, 878 F.3d 642, 646 (8th Cir. 2017) (quoting Brown v. Colvin, 825 F.3d 936, 939 (8th Cir. 2016)). In determining whether the evidence is substantial, a court considers evidence that both supports and detracts from the Commissioner's decision. Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009). However, as long as substantial evidence exists in the record to support the Commissioner's decision, a court may not reverse merely because there is also substantial evidence detracting from the decision, or because it would have ruled otherwise. Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014); see also Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015). A court "do[es] not reweigh the evidence presented to the ALJ and defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reason and substantial evidence." Renstrom v. Astrue, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting Gonzales v. Barnhart, 465 F.3d 890, 894 (8th Cir. 2006)).

"If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Partee v. Astrue, 638 F.3d 860, 863 (8th Cir. 2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005)). The Eighth Circuit has repeatedly held that a court should "defer heavily to the findings and conclusions" of the Social Security Administration. Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010); Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001).

**IV. Discussion**

Plaintiff claims that substantial evidence does not support the ALJ's finding that she was not disabled because the ALJ "failed to derive a sufficient mental RFC" because the ALJ

5

improperly discredited the medical opinion of her treating psychiatrist and relied on the opinion of a consulting physician. (ECF No. 13) Defendant counters that the ALJ properly weighed the medical opinion evidence and substantial evidence supported the ALJ's conclusion that Plaintiff was not disabled. (ECF No. 20)

### A. Treating psychiatrist

The Court first considers the weight that the ALJ assigned to the medical opinions of Plaintiff's treating psychiatrist, Dr. Babin. A treating physician's opinion regarding a claimant's impairments is entitled to controlling weight where "the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). Even if the opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight. Id. This rule is premised, at least in part, on the notion that the treating physician is usually more familiar with a claimant's medical condition than are other physicians. See 20 C.F.R. § 416.927(c); Thomas v. Sullivan, 928 F.2d 255, 259 n.3 (8th Cir.1991). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as [a] whole." Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (quotation omitted).

If an ALJ declines to give controlling weight to a treating physician's opinion, the ALJ must consider the following factors in determining the appropriate weight: length and frequency of the treatment relationship; nature and extent of the treatment relationship; evidence provided by the source in support of the opinion; consistency of the opinion with the record as a whole; and the source's level of specialization. 20 C.F.R. § 416.927(c). Whether the ALJ grants a treating physician's opinion substantial or little weight, "[t]he regulations require that the ALJ

'always give good reasons' for the weight afforded to a treating physician's evaluation." Reed v. Barnhart, 399 F.3d 917, 921 (8th Cir. 2005) (quoting 20 C.F.R. § 404.1527(d)(2)).

Dr. Babin began treating Plaintiff in March 2013. (Tr. 558) At her initial evaluation, Plaintiff reported depression, restless sleep, and frequent auditory hallucinations. (Id.) Dr. Babin observed that Plaintiff demonstrated normal speech, appropriate responses, good concentration, logical thought processes, and intact judgment, and her intellectual ability was "likely average." (Tr. 559) Dr. Babin increased Plaintiff's Prozac and prescribed Geodon, Ativan, and Elavil. (Id.)

At Plaintiff's next appointment with Dr. Babin in June 2013, he noted that she was friendly, cooperative, and polite and displayed a sense of humor. (Tr. 560) Her mood was euthymic and she was not delusional, but she reported continued auditory hallucinations. (Id.) Dr. Babin increased Plaintiff's Geodon and Ativan and continued her other medications. (Tr. 561)

When Plaintiff returned to Dr. Babin's office the following month, she was depressed, anxious, tearful, and unhappy. (Tr. 562) Plaintiff explained that she was depressed about her financial situation and had not been seeing her social worker because she lacked transportation. (Id.) However, she believed she was having fewer auditory hallucinations since increasing the Geodon. (Id.) Dr. Babin observed that Plaintiff's speech and cognitive function were normal, increased her Ativan, and continued her other medications. (Tr. 563)

At her next appointment with Dr. Babin in October 2013, she informed him she was "doing fairly well since she was last seen in July." (Tr. 564) Plaintiff was friendly, cooperative, polite, and calm, and her speech and cognitive function were normal. (Id.) However, she

7

continued to have auditory hallucinations. (Id.) Dr. Babin prescribed Risperdal, increased the Geodon, stopped the Elavil, and added Ambien and Benadryl. (Tr. 565)

In January 2014, Plaintiff again reported "doing fairly well" but her sleep was restless. (Tr. 566) She denied hallucinations and informed Dr. Babin that she was attending church twice a month. (Id.) When Plaintiff returned to Dr. Babin's office in April 2014, she continued "doing fairly well," her mood was "stable," and her sleep was "okay." (Tr. 569) Plaintiff was going to church regularly and denied hallucinations. (Id.) Dr. Babin noted Plaintiff's normal speech pattern, euthymic and cooperative mood, and normal cognitive functioning. (Id.)

Plaintiff visited Dr. Babin in July 2014 and reported feeling "more depressed lately" and "awaken[ing] sad and tearful." (Tr. 771) She opined that her symptoms might be attributable to the recent death of her aunt. (Id.) Dr. Babin noted Plaintiff's "fairly euthymic," friendly, and polite mood. (Tr. 771) He also observed that she looked "fairly relaxed," demonstrated normal cognitive functioning, and denied hallucinations. (Id.)

At Plaintiff's next appointment with Dr. Babin in October 2014, she reported feeling tired but that her mood was stable and she was not experiencing hallucinations. (Tr. 757) Dr. Babin stopped Plaintiff's Ambien and prescribed Restoril. (Tr. 758) In February 2015, Plaintiff informed Dr. Babin that her mood was stable but her sleep was poor. (Tr. 728) Plaintiff had visited her father over the holidays and enjoyed attending his wedding. (Id.) Plaintiff's speech and cognitive function were normal and she denied having hallucinations or suicidal thoughts. (Id.) Dr. Babin instructed her to taper the Risperdal and increase Geodon and Cymbalta. (Tr. 729)

Dr. Babin completed a mental medical source statement ("MSS") for Plaintiff in May 2015. (Tr. 798) In the MSS, Dr. Babin opined that Plaintiff's medications caused drowsiness

and her condition caused her "to have bad days causing need to leave work prematurely or [sic] absent" and to be off task 25% of the time or more. (Id.) In regard to Plaintiff's understanding and memory, her ability to: remember locations and procedures was mildly limited; understand and remember very short and simple instructions was not limited; and understand and remember detailed instructions was moderately limited. (Id.) As to social functioning, Plaintiff was: not limited in her ability to interact appropriately with the general public, ask simple questions, request assistance, or maintain socially appropriate behavior; mildly limited in her ability to accept instructions and respond appropriately to criticism from supervisors; and moderately limited in her ability to get along with coworkers or peers without distracting them. (Tr. 799)

Dr. Babin stated that Plaintiff was "markedly limited" in most areas of sustained concentration and persistence, including the ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities without a schedule; maintain regular attendance and be punctual; sustain an ordinary routine without special supervision; make simple work-related decisions; and complete a normal workday or work week without interruption from psychologically based symptoms. (Id.) However, Dr. Babin found that Plaintiff was mildly limited in her ability to carry out very short and simple instructions and work in coordination with or proximity to others without being distracted by them. (Id.)

The ALJ thoroughly reviewed Dr. Babin's treatment notes, as well as those of Plaintiff's counselors and caseworker, and explained his reasons for discrediting Dr. Babin's opinion. The ALJ wrote:

> Dr. Babin's opinion is given no weight because it appears to be based upon the claimant's subjective complaints, and not upon objective medical evidence. It is not consistent with the medical records, which show that the claimant demonstrated good concentration, logical thought processing, and intact judgment, even when she reported feeling depressed.

(Tr. 20) The ALJ further found that Dr. Babin's "own treatment records describe a higher level of functioning than his opinion would suggest" because the records showed that Plaintiff "took trips, attended a wedding, lived independently," "goes out with friends," and "went on the road with a friend for a couple of months." (Id.)

Plaintiff argues that the ALJ improperly rejected Dr. Babin's opinion on the ground that it was based on Plaintiff's subjective complaints. Plaintiff correctly asserts that "[a] patient's report of complaints, or history, is an essential diagnostic tool." Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997). However, this was not the sole basis upon which the ALJ relied to discredit Dr. Babin's opinion. To the contrary, ALJ provided several "good reasons" for discounting Dr. Babin's opinion.[4]

First, Dr. Babin's treatment notes did not support the presence of the marked limitations he expressed in the MSS. "A treating physician's opinion is not automatically controlling and may be discredited when other medical opinions are supported by better medical evidence or when the physician gives inconsistent opinions." Turpin v. Colvin, 750 F.3d 989, 994 (8th Cir. 2014) (internal citations omitted). Dr. Babin began treating Plaintiff in March 2013. In October 2013, January 2014, and April 2015, Plaintiff was "doing fairly well." Plaintiff's symptoms worsened in July 2014 after the death of her aunt, but her mood was stable again in October 2014. The treatment notes also reveal that Plaintiff's reported auditory hallucinations improved with treatment. "If an impairment can be controlled by treatment or medication, it cannot be

---

[4] To the extent that Plaintiff argues the ALJ failed to apply the factors set forth in 20 C.F.R. § 416.927(C), the Court notes that "[w]hile an ALJ must consider all of the factors set forth in 20 CFR § 404.1527(d), [s]he need not explicitly address each of the factors." Derda v. Astrue, Case No. 4:09cv1847 AGF, 2011 WL 1304909, at *10 (E.D.Mo. March 31, 2011).

considered disabling." Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (quoting Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004)).

In addition, Dr. Babin's clinical findings did not support the marked limitations contained in the MSS. Even when Plaintiff reported feeling anxious and depressed, Dr. Babin consistently noted that she was pleasant and cooperative, her concentration was good, her speech was normal, and her thought content was logical. "Where a treating psychiatrist's contemporaneous treatment notes show a claimant to exhibit no abnormalities during mental status examinations, an ALJ does not err in discounting that psychiatrist's opinion that the claimant suffers from disabling symptoms." Hewitt v. Colvin, No. 2:13-CV-104-ACL, 2015 WL 1286309, at *15 (E.D. Mo. March 20, 2015) (citing Halverson v. Astrue, 600 F.3d 922, 930 (8th Cir. 2010)). Moreover, as the ALJ noted in his decision, "results of these mental status examinations were corroborated at appointments for physical concerns, where the claimant was consistently described as alert, oriented, and appropriate." (Tr. 20)

Plaintiff contends that "reliance on [her] concentration and persistence in the limited setting of therapy sessions was insufficient" ground for rejecting Dr. Babin's opinion. (ECF No. 13 at 12) In support of her position, Plaintiff cites the Program Operation Manual System (POMS) DI § 34001.032(C)(3).[5] However, the section upon which Plaintiff relies does not relate to the ALJ's consideration of medical opinion evidence. Nor does it prohibit an ALJ from considering the results of mental status examinations. To the contrary, "courts have held that normal findings pursuant to a mental status examination are a sufficient basis upon which an

---

[5] The Eighth Circuit has held that, while the internal rules contained in the POMS "do not have legal force and do not bind the Commissioner, courts should consider them in their findings." Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) (citing Shontos v. Barnhart, 328 F.3d 418, 424 (8th Cir. 2003)).

11

ALJ may discredit a treating doctor's opinion that a claimant is disabled." Miller v. Colvin, No. 2:15-CV-02-NCC, 2015 WL 9478038, at *11 (E.D.Mo. Dec. 29, 2015).

Plaintiff also challenges the ALJ's reliance on Plaintiff's activities – such as dating, traveling, socializing, and attending a wedding – to discredit Dr. Babin's medical opinion. (ECF No. 13 at 13) However, "[a]n ALJ may discount a treating physician's opinion when it is inconsistent with a plaintiff's activities of daily living." Johnsonv. Berryhill, No. 4:16-CV-1114-NCC, 2017 WL 4280674, at *4 (E.D. Mo. Sept. 27, 2017). The Court finds substantial evidence in the record to support the ALJ's decision to assign Dr. Babin's opinion no weight.

### B. Consulting physician

Plaintiff argues that the ALJ erred in assigning "strong weight" to the opinion of the state agency psychological consultant, Dr. Akeson. More specifically, Plaintiff contends that Dr. Akeson's opinion did not merit strong weight because it "was not based on the longitudal record[.]" (ECF No. 13 at 15) In response, Defendant asserts that the ALJ properly weighed Dr. Akeson's medical opinion.

Unless the ALJ assigns controlling weight to a treating physician's opinion, the ALJ must explain the weight given to every medical opinion of record, regardless of its source. See 20 C.F.R. §§ 404.1527(c), (e)(2)(ii); 416.927(c), (e)(2)(ii). When determining the appropriate amount of weight to give a medical opinion from a non-treating source, the ALJ considers the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. Wiese v. Astrue, 552 F.3d 728, 731 (8th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)).

Dr. Akeson completed a psychiatric review technique and mental RFC assessment for Plaintiff, based on her medical records, in May 2014. (Tr. 88-90, 93-95) Dr. Akeson diagnosed

Plaintiff with "schizophrenic, paranoid, and other psychotic disorders" and "anxiety-related disorders," and found that she was moderately restricted in her activities of daily living and social functioning and mildly limited in her ability to maintain concentration, persistence, or pace. (Tr. 88) Dr. Akeson specifically noted that noted that Plaintiff: "can maintain [concentration, persistence, or pace] in simple to moderately complex tasks"; "would do best in a socially limited environment"; and "could adapt to a work setting with limited social interaction." (Tr. 93-94) The ALJ gave Dr. Akeson's opinion "strong weight," reasoning that "it is consistent with the limited extent of the claimant's treatment for schizoaffective disorder and anxiety, and with the claimant's reported activities of daily living." (Tr. 20-21)

Plaintiff correctly points out that Dr. Akeson completed his assessment in May 2014, and her condition worsened in July 2014. However, the records reveal that Plaintiff's condition improved and stabilized in late 2014 and early 2015, when the ALJ issued his decision. Moreover, despite the strong weight he purported to assign Dr. Akeson's opinion, the ALJ found Plaintiff significantly more restricted than did Dr. Akeson. For example, even though Dr. Akeson opined that Plaintiff was "not significantly limited" in most areas of concentration and persistence, the ALJ nonetheless limited Plaintiff to performing two hours of sustained concentration and persistence per workday. (Tr. 17) Likewise, although Dr. Akeson found that Plaintiff was "moderately limited" in her ability to interact with the general public and "not significantly limited" in her ability to get along with coworkers, the ALJ restricted her to "occasional and superficial interaction with coworkers and the public." (Id.)

Moreover, the Court notes that Plaintiff did not identify any harm resulting from the ALJ's alleged error in giving too much weight to Dr. Akeson's opinion. "To show an error was not harmless, [a plaintiff] must provide some indication that the ALJ would have decided

13

differently if the error had not occurred." Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012). Upon review of the record and the ALJ's decision, the Court finds that the ALJ evaluated all of the evidence of record and provided good reasons for the weight he accorded Akeson's opinion.

## V.    Conclusion

For the reasons discussed above, the Court finds that substantial evidence in the record as a whole supports the Commissioner's decision that Plaintiff is not disabled. Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying Social Security benefits to Plaintiff is **AFFIRMED.**

A separate judgment in accordance with this Memorandum and Order is entered this date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of September, 2018